UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-239 (ECT)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **GOVERNMENT'S POSITION** |
| v. | ) **WITH RESPECT TO** |
| | ) **SENTENCING** |
| HARED NUR JIBRIL, | ) |
| | ) |
| Defendant. | ) |

Mr. Jibril is the owner of Hormud Meat and Grocery Market in St. Cloud, Minnesota. He and his employees regularly exchanged customers' food assistance benefits for cash, phone minutes, international wire transfers and other unauthorized items. On December 1, 2021, Mr. Jibril pleaded guilty to an information charging Conspiracy to Commit Wire Fraud in violation of 18 U.S.C §§ 1343 and 1349 and Wire Fraud in violation of 18 U.S.C. § 1343. For the reasons set forth below, the government believes that a sentence of 30 months incarceration is sufficient and appropriate in this case and respectfully requests the Court impose such a sentence.

## BACKGROUND

Mr. Jibril opened the Hormud Meat and Grocery Market ("Hormud") in 2009 to sell food, products, phone cards, and money transfer services in St. Cloud, Minnesota. Mr. Jibril owned and ran the store and regularly worked as a cashier. Plea Agreement ¶ 2. He was consistently self-employed at Hormud from 2009 through the present.

### SNAP and WIC fraud

Right away, in 2009, Mr. Jibril applied for authorization for Hormud to accept federal food assistance benefits, and was accepted into the Supplemental Nutritional Assistance Program, known as SNAP. PSR ¶ 10. The USDA established SNAP to help low-income families obtain nutritious food at approved retail stores. PSR ¶ 7. As such, SNAP benefits may only be exchanged for eligible food items. *Id*. Stores may not give customers cash, cigarettes, non-food products or other ineligible items; owners and employees of SNAP-authorized stores must certify that they understand and will abide by these rules. *Id*. In his SNAP application, Mr. Jibril certified that he understood that exchanging cash for food stamps was illegal. *Id*. In January 2018, Mr. Jibril signed a reauthorization application certifying, among other things, that he would "accept responsibility on behalf of [Hormud] for violations of the Supplemental Nutrition Assistance Program regulations, including those committed by any of the firm's employees, paid or unpaid, new full-time or part-time." *Id*. The materials explained that these violations included but were "not limited to: Trading cash for food stamp benefits (i.e. trafficking); Accepting food stamp benefits as payment for ineligible items; Accepting food stamp benefits as payment on credit accounts or loans; Knowingly accepting food stamp benefits from people not authorized to use them." *Id*.

In 2009 Mr. Jibril also applied and received authorization for Hormud to accept WIC benefits. WIC, the Special Supplemental Nutrition Program for Women, Infants

and Children, was created by the USDA to provide supplemental foods and other assistance to pregnant, postpartum, and breastfeeding women, infants, and children from families with inadequate income. WIC benefits may only be used at authorized retailers and only for specific foods with targeted nutrition for pregnant women and children. *Id*. Between 2009 and 2020, Mr. Jibril periodically signed and submitted WIC vendor retail agreements promising that he would not exchange WIC benefits for any cash, non-food items or food items other than the WIC-allowed foods specified on the customer's WIC account. *Id*.

In or about 2018, the FBI got a tip that Hormud was trafficking SNAP benefits for cash and other items. PSR ¶ 11. Working with confidential informants, investigators recorded undercover transactions at Hormud that confirmed the fraud. *Id*. ¶ 12. Investigators also reviewed USDA data and saw that Hormud's average monthly redemptions for SNAP transactions were way above what would be expected for a store the size of Hormud. *Id*. ¶ 11. An analysis of WIC metrics likewise revealed numbers and patterns inconsistent with lawful WIC acceptance. *Id*. WIC records showed grossly elevated average transaction amounts, especially given the store's small size, and anomalous customer patterns and distance of travel, with many customers coming from great distances and bypassing large retailers with much better food selections. The Minnesota WIC program audited Hormud and found that the market lacked 58.8% of the inventory it claimed to have sold for WIC benefits during the audit month. PSR ¶ 11. This audit was very conservative in favor of Hormud

because WIC looked only at seven foods,[1] rather than all WIC-eligible foods carried, and presumed an ending inventory of zero for each one, such that it presumed all the targeted products were sold to WIC customers (i.e., none to non-WIC customers).

Additionally, investigators did surveillance and repeatedly saw customers go into Hormud and leave with no bags or food despite USDA records showing the customers' SNAP cards being processed for a purchase. *Id*. ¶ 12. When agents executed search warrants for Hormud and Mr. Jibril's adjacent restaurant, they found dozens of SNAP and WIC EBT cards in other people's names. *Id*. In SNAP and WIC fraud cases, store owners often give customers cash or items on credit, hold onto their cards, and then run the SNAP or WIC cards through the system once they are reloaded with the benefits.

To assess loss, Special Agent Todd Bucci compared SNAP redemptions at Hormud to those at three St. Cloud stores similar to Hormud in size and category (ethnic grocery), between February 13, 2018, and August 5, 2021 (from the first to the last undercover transaction). The difference between Hormud's total transactions and

---

[1] The audited foods were:
- Similac Advance infant formula – 12.4 ounce powder
- Kemps 1% milk – one gallon containers
- Old Orchard Apple Juice – 64 ounce containers
- Mom's Best Quick Oats – 16 ounce containers
- Kellogg's Special K cereal – 12 ounce boxes
- Kellogg's Corn Flakes cereal – 12 ounce boxes
- Crystal Farms Cheddar Jack Shredded Cheese – 8 ounce packages

the average of the totals at the three comparable stores resulted in a loss amount of approximately $3,324,945.56 in SNAP benefits. PSR ¶ 12. Extrapolation of the WIC audit results led to a WIC estimated loss of $830,330.16. *Id*. Both are highly conservative measures because they included only the period during which undercover transactions occurred and because the WIC audits made assumptions and limitations favoring Hormud, as described above.

**Unemployment Insurance Fraud**

During the investigation of SNAP and WIC fraud at Hormud, investigators saw unemployment insurance payments going into Mr. Jibril's bank account in 2020. They discovered that Jibril had filed for unemployment insurance pursuant to Minnesota's COVID-19 economic assistance. PSR ¶ 13. Unemployment insurance, or UI, is a joint state and federal program run in Minnesota by the Department of Employment and Economic Development (DEED). PSR ¶ 9. UI provides cash payments to eligible workers who have lost their jobs or full employment. *Id*. As a result of the COVID-19 pandemic and attendant economic crisis, the federal government provided significant supplemental benefits to states' UI programs. *Id*. To receive such UI benefits, applicants had to certify to DEED that they had lost employment due to the pandemic. *Id*. Authorized recipients received cash payments on a weekly basis, either through direct deposit or on a debit card. *Id*.

On March 29, 2020, Mr. Jibril applied for UI, claiming he was a cashier who had been laid off by Hormud due to the pandemic. PSR ¶ 12. He claimed he was not

self-employed. *Id*. DEED accepted his application and Mr. Jibril received a total of $32,724 in unemployment assistance between March 29, 2020, and August 1, 2020, all while owning, operating, and working at Hormud. *Id*. During this time, Hormud was doing full business and in fact processed substantially more SNAP and WIC transactions than during the same period in 2019.

## GUIDELINES

The parties agree with the Guidelines calculations of the PSR, and the government asks the Court to adopt the same. The PSR found Mr. Jibril's total offense level to be 22, based on the loss amount of $4,187,999.72. PSR ¶ 28; Plea Agreement ¶¶ 7b, 10. It determined his criminal history category to be I, resulting in an advisory Guidelines range of 41 to 51 months' imprisonment. PSR ¶¶ 35, 59; Plea Agreement 7f.

## ARGUMENT

As the Court well knows, it must determine what constitutes a sufficient sentence as guided by the factors of Title 18, United States Code, Section 3553(a). In view of the aggravating and mitigating facts of this case as applied to the factors of Section 3553(a), the government submits that a term of imprisonment of 30 months is appropriate.

Mr. Jibril committed consistent, blatant, substantial fraud against programs designed to ensure that disadvantaged individuals and families have enough nutritious food to eat. By allowing customers to use their SNAP and WIC benefits for cash,

phone cards, and other unauthorized merchandise, Mr. Jibril drove abundant foot traffic to his store, profiting from the government's generosity. Mr. Jibril and Hormud created a culture of food benefit fraud that exploited important and laudable programs, including one created to provide basic nutrition to pregnant women and young children. By normalizing this conduct, Mr. Jibril undermined public confidence in the SNAP and WIC programs and disadvantaged Hormud's competitors who played by the rules. Mr. Jibril's conduct contributed to and encouraged the SNAP and WIC fraud that is pervasive among small grocery stores, fraud that threatens the benefits of those who truly need and rely on them. This is serious conduct that deserves serious sanction.

But Mr. Jibril did not stop there. He also applied for COVID unemployment insurance, pretending to be a laid-off clerk, as his store surpassed its SNAP and WIC sales of 2019. While COVID crushed many companies and businesses, it also brought a boom to others like Amazon, Target, and grocery stores, which now had people's dining out dollars coming through their doors. From March 29, 2019, to August 1, 2019, Hormud ran $241,773.71 in SNAP sales and $ 93,348.36 in WIC sales. From March 29, 2020, to August 1, 2020, the time during which Mr. Jibril was receiving unemployment payments, Hormud had $552,360.33 in SNAP transactions and $128,480.30 in WIC transactions. So, Mr. Jibril was simultaneously taking government aid for the unemployed and making more money at his store than he did the year before.

In sum, Mr. Jibril committed *a lot* of fraud against benefits designed to feed needy people. When audited, Hormud only had 42% of the items it claimed it sold to WIC customers, meaning at least 58% of those benefits were exchanged for cash or other things. Each such transaction is a lie, as each requires putting false information into the cash register so that it appears to be a SNAP- or WIC-eligible product. And this happened again and again, essentially allowing customers to use Hormud like an ATM with their SNAP and WIC cards. Were it not for Mr. Jibril's immediate and fulsome acceptance of responsibility, the government would ask for a sentence in the middle of the Guidelines range.

The government instead seeks a sentence three levels below that range because Mr. Jibril, once caught, did everything right. He agreed to plead guilty to an information covering all his fraud and sparing significant government resources. He was cooperative with all aspects of the case including restitution, appears genuinely contrite, and provided his financial records and forms promptly without even being reminded (a rather rare occurrence). These countervailing considerations deserve credit and, along with his lack of criminal record and positive community engagement, call for a downward variance. Furthermore, the government believes that Mr. Jibril now understands the seriousness and wrongfulness of his actions and that his felony conviction and loss of SNAP and WIC business, on top of a term of imprisonment, will be sufficient to deter him from committing this crime in the future. While certainly not a defense or an excuse, it is also notable that, unlike many SNAP-fraud defendants,

Mr. Jibril did not appear charge his customers a "fee" for the illegal SNAP transactions, but rather provided cash or items in the same value as the SNAP benefits redeemed.

Based on the totality of the circumstances in this particular case, the Section 3553(a) factors support a downward variance and a sentence of 30 months. Additionally, restitution is mandatory under 18 U.S.C. § 3663A, and the USDA should be awarded full restitution for the losses it sustained because of defendant's fraud. Here, restitution and loss amount are one and the same and the parties agree Mr. Jibril owes $32,724 to the Minnesota Department of Employment and Economic Development and $4,155,275.72 to the USDA ($3,324,945.56 for SNAP and $830,330.16 for WIC). Plea Agreement ¶ 10.

## CONCLUSION

Based on the foregoing, it is the position of the United States that a sentence of 30 months' imprisonment is sufficient but not greater than necessary to effect the goals of the relevant sentencing factors of 18 U.S.C. § 3553(a).

Dated:  March 22, 2022                    Respectfully Submitted,

CHARLES J. KOVATS, JR.
Acting United States Attorney

s/ Sarah E. Hudleston

BY:  SARAH E. HUDLESTON
Assistant U.S. Attorney
Attorney ID No. 0351489